ELKAN SNYDER, an Infant, by BESSIE SNYDER, His Guardian ad Litem, Respondent, *v.* UNION RAILWAY COMPANY OF NEW YORK CITY, Appellant.

First Department, January 21, 1932.

*Addison B. Scoville* of counsel [*A. C. Mayo* with him on the brief; *Alfred T. Davison*, attorney], for the appellant.

*George A. Grabow*, for the respondent.

MERRELL, J. Plaintiff, an infant, has sued to recover of the defendant for personal injuries which he sustained on January 14, 1926, from coming in contact with a trolley car operated by a motorman of the defendant on the defendant's surface road near the intersection of Brown place with One Hundred and Thirty-eighth street, in the borough of The Bronx, New York city. At the time of the accident plaintiff was of the age of eight years. The action came to trial five and a half years after the accident occurred. As the result of the accident the infant plaintiff suffered very severe personal injuries, including a fracture of the skull, with resulting permanent disability. The infant plaintiff testified at the trial that on January 14, 1926, he was a pupil attending a public school on the northerly side of One Hundred and Thirty-eighth street, in the borough of The Bronx, opposite the intersection of Brown place; that shortly after the noon recess was declared that day plaintiff left his school and proceeded to a candy store on the southerly side of One Hundred and Thirty-eighth street about thirty or forty feet easterly of Brown place; that he afterwards left the candy store for the purpose of returning to his school;

that while upon the sidewalk in front of the candy store he looked to the east and saw, about half a block distant, the defendant's trolley car approaching, traveling on the northerly track of the defendant's road in a westerly direction. Plaintiff testified that he then started to cross One Hundred and Thirty-eighth street from in front of the candy store in a diagonal, northwesterly direction toward his school; that he had no recollection of coming in contact with the trolley car, but other evidence in the case shows that the infant plaintiff was struck by the left front corner of the defendant's trolley car proceeding westerly on the northerly track. At that time the infant plaintiff was not upon the west-bound trolley track, but was about to cross the same. Plaintiff testified that he started to run across to the uptown side of One Hundred and Thirty-eighth street, and that when he was out on the sidewalk in front of the candy store he noticed the trolley car half a block away coming toward him "fast." The infant plaintiff saw the car but once before attempting to cross the street. At the intersection of Brown place with One Hundred and Thirty-eighth street a traffic officer was on duty at the time. The traffic officer testified that the day was clear, and that he saw the approaching car and the infant plaintiff crossing the street; that he first saw the infant plaintiff when the car was about ten or twenty feet away from him and approaching from the east, and that at that time the car was about fifty or sixty feet easterly from where the traffic officer was standing; that when he first saw the trolley car it was about seventy or eighty feet easterly from Brown place. The traffic officer testified that the front left corner of the defendant's car struck the infant plaintiff, and that he was thrown back upon the east-bound track of the defendant's railway; that at the time the infant plaintiff was struck he was running across the street in a diagonal direction toward the school; that immediately the defendant's car was brought to a stop at about forty to fifty feet east of Brown place, and about forty or fifty feet easterly of the regular stopping place of trolley cars at that point. The officer testified that he picked up the boy after he was thrown upon the east-bound car tracks at a point about the rear of the car, which the officer thought was about fifty feet long, and which had been brought to a stop.

On the part of the defense the testimony of the motorman employed by the defendant at the time of the accident was taken by deposition in Ireland, where the motorman had taken up his residence subsequent to the occurrence of the accident. In his deposition the motorman testified that in his opinion the accident

occurred about one hundred and ten feet east of Brown place and not upon the crosswalk; that at the time the infant plaintiff was struck he was running diagonally across the street, facing in a westerly direction, although going north. On cross-examination the motorman testified that when he first observed the infant plaintiff he was about twenty feet from the street car, and that the motorman immediately applied his brakes and sounded the ·gong on his car.

Two ladies, passengers upon the car, testified for defendant, but neither of them was an eye-witness of the accident. One of these witnesses testified that she heard the motorman ring the bell a number of times before bringing the car to a standstill. This completed the testimony in the case.

The justice presiding at the trial submitted to the jury, as a question of fact, whether, under the evidence, the defendant's motorman had been negligent in the operation of the defendant's trolley car, and whether or not the infant plaintiff was himself in the exercise of due care commensurate with his age. The court charged the jury that if it found that the accident happened through the carelessness and negligence of the motorman of the trolley car, and that there was no negligence displayed by the boy in what he actually did on that afternoon in crossing the street where he did, they could render a verdict for the plaintiff in such amount as would fairly compensate him for the pain and suffering he endured through the injuries that he sustained. At the close of the main charge of the court counsel for plaintiff requested the court to charge the jury that the infant plaintiff at that time was *non sui juris.* The court refused to so charge, the court stating to the jury that " The rule in reference to that, Counselor, is that he is charged with such a degree of carefulness and natural, reasonable care, as would be expected of a boy of eight years old who has been allowed by his parents to go upon the street alone and attend school for two years prior to the happening of the accident, without attendance." Thereupon plaintiff's trial counsel made the following request: " Will your Honor charge the jury that the plaintiff, even if he was guilty of contributory negligence, and although that negligence may have in fact contributed to the accident, if the defendant could by the exercise of ordinary care and diligence, have avoided the instance which happened, the plaintiff's negligence will not excuse the defendant? " To this the court made the following response: " The Court: Well, that refers to a situation — yes, I so charge, with this amendment — Mr. Mayo [defendant's trial counsel]: I except." The court then stated: " The Court: That refers to a case where someone does run in front of an auto-

mobile or a trolley car, and under those circumstances it is the duty of the one in control of the automobile or trolley car to use the best efforts that he can to prevent the happening of the accident. Mr. Grabow: And if he could have — Mr. Mayo: I except to that. The Court: And if he could have, by the exercise of reasonable care, avoided the accident, of course it is his duty to avoid it." To such instructions counsel for defendant duly excepted. Plaintiff's trial counsel, by such request, was attempting to apply the doctrine of " last clear chance " and the court, in its charge, apparently applied such doctrine to the circumstances of the case on trial. We are of the opinion that there was nothing in the evidence upon which the jury could have held the defendant liable under the doctrine of " last clear chance." That doctrine can only be applied where the evidence shows that the defendant to be charged with liability had knowledge, through its motorman, that the plaintiff was in a position of peril at a time when it was within the power of the motorman to avoid striking the infant plaintiff. There is no evidence in this case showing that the motorman saw the infant plaintiff until he was within ten or twenty feet of the defendant's car and running in a northwesterly direction across One Hundred and Thirty-eighth street. The traffic officer testified that when he first saw the boy running across the street the trolley car was " maybe 10 feet or so — 20 feet " from the boy. The only other testimony with reference to the position of the boy immediately prior to being struck was that furnished by defendant's motorman, who testified that the infant plaintiff was twenty feet from him when he first saw him crossing the street. Under such circumstances we think the court erred in charging the " last clear chance " doctrine. (*Velthusen* v. *Union Railway Co.*, 152 App. Div. 121; *Goldman* v. *Lanigan Brothers, Inc.*, 185 id. 742.) In the case first above cited plaintiff's intestate was struck by a street car while crossing the defendant's tracks. In that case, as in the case at bar, the deceased attempted to cross the track without exercising any care. There was no evidence that the motorman could have prevented striking the deceased. The trial court charged the jury in that case that if, under all the circumstances, the jury found that the motorman had the last clear chance to avoid the accident, it was immaterial whether or not the deceased himself had been guilty of contributory negligence. This court held that such instructions by the trial court were erroneous. In the opinion of this court, written by Mr. Justice McLaughlin, it was said (at p. 122): " I am of the opinion that this was error and necessitates a reversal of the judgment. There is no evidence that when the deceased started to cross the uptown track, or indicated

an intention to do so, the motorman could have prevented the collision. * * * He was struck just as he was leaving the easterly rail of the uptown track, and from the time when he was first seen until he was struck he traveled at an ordinary walk. The car could not have been running at a very great rate of speed because, during the same time, it traveled at most double the distance that the deceased did. So that, if he were negligent in going upon the track when the car was so near as to render the act dangerous, then such negligence cannot be regarded as so remotely connected with the accident as to make the rule laid down in the charge applicable. The rule of law stated does not apply unless the character of the accident is such that it can fairly be said that the negligence of the injured party was not its proximate cause. (*Rider* v. *Syracuse R. T. R. Co.*, 171 N. Y. 139; *Bambace* v. *Interurban St. R. Co.*, 188 id. 288.) " The case of *Goldman* v. *Lanigan Brothers, Inc.* (*supra*) also passed through this court. That action was brought to recover for the death of a fourteen-year-old boy who was struck by an automobile truck of the defendant while playing ball in the street. In that case the boy, who was standing upon the curb, suddenly ran into the street and just as he caught the ball he was struck by the truck, the defendant's chauffeur being unable to avoid hitting him. The trial court charged that where a person had unexpectedly put himself in danger, the defendant, having full notice of the fact, should have turned out, and in failing to do so was guilty of negligence, and that the negligence of the boy in running into the street would not prevent a recovery. Mr. Justice SMITH, writing for this court in that case, said (at p. 744): " There is no evidence in this case to which this doctrine can apply. It seems very clear that the boy ran out suddenly, and there was no such situation as would make applicable the rule that where a person has put himself in danger, though negligently, and the defendant having full notice of the fact, should have turned out and negligently did not, that then the boy's negligence would not defeat the action. This is a plain case of negligence. The boy's freedom from contributory negligence must be found in order to authorize a recovery, and this was not a case for the application of the rule stated; therefore, the court erred in charging the jury to that effect, and for that error the judgment and order must be reversed and a new trial granted, with costs to the appellant to abide the event."

We are, therefore, of the opinion that the rule of " last clear chance," under the circumstances disclosed by the evidence, has no application. The testimony presented a clear question of fact as to the negligence of the defendant's motorman and as to whether

or not the infant plaintiff had himself been in the exercise of due care. We think the court erred in granting the request of counsel for plaintiff to charge the jury that plaintiff, even if he was guilty of contributory negligence contributing to the accident, and although that negligence may have, in fact, contributed to the accident, plaintiff's negligence would not excuse defendant. Such instruction would have been proper only where the doctrine of "last clear chance" could be applied. We do not think it was applicable to the circumstances disclosed by the evidence in the present case.

The judgment appealed from should be reversed and a new trial granted, with costs to appellant to abide the event.

FINCH, P. J., O'MALLEY, SHERMAN and TOWNLEY, JJ., concur.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.